Well, happy to be here, Your Honor. May it please the Court, Counsel Heather Marks from Cozen O'Connor on behalf of the appellants with me in the gallery, Your Honor, is my client Stephen Min. We have two issues on appeal. I want to talk about them both. I would like to reserve five minutes in rebuttal, so I'll try to be brief. The first issue that we have before Your Honors is the District Court's error in determining that the motion to seek proposed discovery violated the Court's earlier December 2023 order. Context is everything in this, Your Honor. It's important to remember my clients are owed more than $1.9 million in their unpaid judgment against Mr. Deutsch and his company for a real estate fraud that absconded with their money. It's not very often you can borrow a phrase from a prior appellate argument, but to use your phraseology, Judge Loken, we're trying to find where that money's been stashed. There was a $23 million transfer that took place, and we're trying to trace those funds. The judgment my clients are owed has been outstanding since 2010, and it has accumulated 15 years of post-judgment interest. Judge McNeil Well, the District Court seemed to think you've done, that everything that ought to have been done was done, and you've done, and are attempting to do more than what should be permitted. Why is the Court wrong? We're chastised at some points for being too aggressive and at others for taking too long to do it. I don't think it's taking too long. I think it's just going back to the same well multiple times, not finding anything. So that's important, Your Honor, and I want to make sure that I distinguish that. We're not going back to the same well, and we wanted to make absolutely certain that the Court understood we were not going back to the same well. We are not looking for the same things. So we never served any discovery until we got the Court's confirmation that this is not the same well, and I think it's important for me to make clear why this is different. Why do we want to ask a law firm for their investigative materials? And this was your law firm, right? No. Your client's law firm, or help me out with this. That's exactly what I want to talk about. It was not just my client's counsel. So this was a gigantic real estate fraud. In 2009, the limited partners in that real estate partnership hired a law firm out in New York, the Sher Law Firm. That's the firm that we seek to depose and seek to get their information. My clients were not their only clients. The plaintiffs were the limited partners, and much of the investigation, much of the information that the Sher Law Firm received on behalf of those limited partners was received on an attorney's eyes only basis, and much of it was not presented to my clients. So it is absolutely inaccurate in this record to say my clients have access to all of that information. They don't. This Sher Law Firm was the tip of the sword to try and figure out where in the world this money is stashed. I'm going to use that phrase, Judge Loken. And that's exactly the information that we want. We don't have that. That is in their files. We've reached out to them and said, what's the mechanism here? And they're like, we're going to need a subpoena. We're going to have to have a court order to produce this because of the attorney's eyes only designation. So that's why we want to talk about them. So I think it's also important for us to distinguish so that we know it's not the same well. What did we ask them? We asked them for documents and records related to the development and pursuit of claims. How did you bring this in? What was it that led you to bring this lawsuit? Tracing the money. We have the complaint in the appendix and the detailed... I think on its face that's improper. I'm sorry, the request for the investigative materials? Yeah, asking, taking discovery of a law firm. Why did you bring this case? Remember, Your Honor, my... That frankly is obnoxious. My client is one of the plaintiffs. So we're asking our attorney, may we see these records? And more importantly, may we see what you received? So it's not just, you know, let me get into your... In 2015 or whatever it was. Yes. Yes. The money is somewhere. Maybe later. That brings up... There's a docket number on this case in the district court. And it's the same docket number on the prior order. And it's the same docket number on this order. When does supplemental discovery start a new case? And if so, when does it end? Does supplemental discovery start a new case? Which you're doing here. Before. So... This is supplemental discovery. When we filed... It's... I'm sorry. It's judgment enforcement proceedings. Post-judgment... When does each action to enforce a judgment start a new district court proceeding? So we have filed an act... There's nothing in the briefs on this. Correct. So I'm asking you, with all the research you've done on this, because it seems if every attempt to enforce a judgment starts a new case, then what's within the confines of that case is different than if each... Well, when does it end? When can you not any longer... Try to find where the money is stashed. Yeah. So it's not the... You researched that at all. It's not the judgment that starts the new case, Your Honor. It's the Minnesota statute. So we have the judgment... It's a filing. It is a filing. It's either connected to another case or it starts a new case. So the new case that we filed in front of the district court... So every time you've gone around the country filing one of these judgment enforcement actions, it has started a new case? So we have... No, Your Honor. We have domesticated... We were given our judgment here in Minnesota. Then there were proceedings in an attempt to enforce that judgment that took place out in New York. Our judgment here, after the bankruptcy stay was lifted, needed to be domesticated again. We needed to renew that judgment. That's what we did before the district court. That's how we got our default judgment against Mr. Deutsch. We renewed our judgment. So that's the action? That's the action. And does it end? Rule 69 does not give us, when the judgment expires... But doesn't it require you to have some new evidence of conduct that would justify the additional discovery? The judge's order indicates that if we want to get additional discovery into Mrs. Barrett's finances, there has to be some new evidence. And what we wanted to... Because there is none. Well, what we wanted to make certain, Your Honor, is two things. This is not discovery into her finances. This is an investigation of where the $20 million in transfers went. That's Mr. Deutsch. There are going to be transactions in that that he's involved with. I can't opine as to what's in the investigative file. I don't know what documents the share law firm received. Can you help me? I mean, what are you hoping to find in there, just to try to put some details into the context here? Because the argument is, essentially, you're looking into the finances in violation of the court's order. Can you give any more detail about what you're hoping to find or what you think you might find in there? I will take anything at this point in time, Your Honor. I mean, what I'm hoping to find is some path, that there is some description that he's made somewhere about this transaction. I want to look at his bank records. I want to look at anything else. You want to get the second wife liable in the case. What I want to do, Your Honor, is understand. If we look at the complaint that was filed by the share law firm, it's very detailed. And you see those details at page – Have you made an effort to get his bank records before? We have made an effort to get his bank records a while ago, yes. And that – I don't have any. I don't have any. I don't have any. I'm living off – I'm thinking that the share law firm may have had better success. Correct. Correct. And this is where the timing actually may work in our favor. We deposed Mr. Deutsch shortly before COVID. And all he would say to us is, I'm living off the largest of my wife. Thank goodness my wife hasn't kicked me to the curb. Thank goodness I'm here. He's a pauper with $23 million stashed somewhere. And he's good at hiding it. And so we want the investigative materials. We want to understand this is not a notice pleading that the share law firm made. They were very detailed in the descriptions of their tracing of this money. You can't make those allegations as an officer of the court without having some reason to make them. I want to see what that reason was. If I have to go back and start over, this is not an investigation into Mrs. Baird. This is an investigation into what the law firm had and how they used it to make these allegations. I want to see what they had. And we were very careful. And I'll talk about this in rebuttal. I'll speak quickly now. We wanted to be absolutely certain that we didn't violate this court's order. Are there similar cases to this to review where the efforts have been made at a former law firm? I have not found those, Your Honor. I have not found those. We were trying to be extraordinarily deferential rather than abusing the judicial process, rather than just issuing the subpoena and saying, come and get us, quash it if you don't like it. We did not do that. We wanted to be certain that the judicial process was respected, that we did everything we could to explain to the court why this is a different well, why we need this information, because without this information, what I need to make crystal clear to you, Your Honor, is— Is there a justification for the law firm to have hid some basis for what ultimately defeated them? If they wanted to succeed in what they were litigating, what would be the logic of them being your adversary? I don't think they're our adversary. I think they're being careful to protect attorneys' eyes-only designations. I think they're being careful to protect the fact that there was a joint representation. And I think they were stopped primarily as a result of the bankruptcy filing. There were multiple bankruptcy filings that were made here. That's why this case was taken forever. And that's really what stopped them. And so now we're picking up the torch not on behalf of the limited partners, but on behalf of my clients who were just some of those limited partners. I want to take the torch, and I want to run with it. But I guess you're running into the same wall with the bankruptcy court saying you're harassing. And we're not trying to harass Mrs. Baird. And that's why we did — this is fundamentally different. We're not issuing subpoenas to her banks. We're not issuing subpoenas to her children. We're not issuing subpoenas to anybody with whom she has a relationship. We are taking a step back and saying, all right, where did this money go? Where is this $23 million stashed? And so in order to do that, we need an understanding of the underlying context. This is — I don't know what's in that. The only reason that Mrs. Baird would be affected is if her financial records are in there, and if they are there. I don't know that that's the case, Your Honor. And this is the fundamental issue I want to make certain I make clear. Without the ability to pursue discovery, because it might eventually lead to the discovery of Mrs. Baird's finances, we are entirely stymied. I don't want to violate a court order. And I'm very — my client certainly wants to make certain that this doesn't happen. So how do I even approach the court? We have been sanctioned for asking for permission to serve discovery that was not served on an issue that we believe did not fall within the purview of the court's prior order. Under Rule 69, how do we issue any additional discovery? Because we acted in good faith argument. I want to make certain we did act in good faith, Your Honor. But the sanctions standard, the abuse of discretion standard — I don't want to talk about sanctions. What I'm hearing you argue is in 2045, if you come upon a — your clients come upon a paper that suggests there's another person out there like Cher, they can go in and bring an action, a post-judgment enforcement, and start an — all under this Minnesota case? All under the 2009 case? I don't believe that's correct, Your Honor. When the judgment expires, there's — That's what I'm hearing you say. When the judgment expires, there's nothing to collect upon. When does the judgment expire? When the judgment expires. The Minnesota judgment wouldn't exist but for the 2009 judgment. Correct. And the Minnesota — The Minnesota judgment is really a proceeding to enforce the 2009 judgment. It is a renewal of the judgment so that we can pursue discovery and enforcement of that 2009 judgment. Correct. And so if you can find a way to do that in 2045, here we go again. I disagree, Your Honor. I disagree. I do want to save a little bit of time for rebuttal, if I may. If the 2009 judgment has expired, how can it possibly be that the Minnesota one hasn't? The 2009 judgment was — Expired being a — it's almost an undefined term of art here. It was renewed and it was domesticated. That's what the district court — What does that mean? What does that do? It renews the judgment for another 10 years. What does domesticated mean? I don't understand the word. So we've — I do, but not in this context. You do. You do. It is the judgment that was issued at the state court. In order to collect upon it, in order to give the court's jurisdiction, you have to take that judgment and domesticate it. Enforcement. Okay. Enforcement action. Yes. So we're still working on the 2009 judgment. Which has been renewed. And when does that end? It would — the judgment has been renewed so it would end 10 years after the renewal. So if you can — if your clients can persuade the Southern District of Arizona that we have a new case here, a new basis for a new judgment, here we go again. We would have to domesticate an existing judgment. It's not a new judgment. The judgment — it's a renewal of the existing judgment. How about we domesticate the Minnesota judgment now? It still ties back — According to your position. No. It still ties back to the original judgment. So it's not time immemorial. 2009. Correct. I would say there's plenty of judicial authority to say you're done. Under the Minnesota statutes, you're allowed — your judgment lasts for 10 years, and then you can renew your judgment for 10 years. So that is — as long as you have an underlying enforcement — This is judicial remedial talk. The statute doesn't control the extent of judicial powers to enforce a prior judgment. Let me put it this way. It's almost as if you have a guarantee. If the loan is extinguished, your ability to collect on a guarantee is also extinguished. This is similar. If our underlying judgment is active, we can use Rule 69 to collect upon it. If the underlying judgment is extinguished, Rule 69 — it's the guarantee on an extinguished note. You can't do a darn thing. Thank you, Your Honor. I would appreciate two minutes in rebuttal. Thank you. Ms. Markowitz. May it please the Court, my name is Sharon Markowitz, and I represent Apelli Penny Baird. Plaintiff's characterization of the proposed subpoena has been a bit of a moving target. In particular, this morning I heard them say that it's all about where the money is stashed. I'd like to refocus this Court's attention on what the district court was told, because after all, the question here is whether the district court abused its discretion in determining, among other things, that the proposed discovery was into Baird's finances, which it had previously prohibited in an unappealed order. So here's what the district court knew. It knew that the subpoena asked for a deposition of the share firm with no defined scope. It also knew that it asked for documents related to the 2009 lawsuit, including related to claims against Baird. It asked for documents relating to any litigation regarding transfers between Deutsch and Baird, among other things. Then plaintiffs told the district court in their briefing that the proposed discovery was, quote, not limited to Baird's finances. In other words, it included information about Baird's finances. They said the share firm had information about their, quote, financial investigation. In other words, it's about finances. And that it had information about transfers between Deutsch and Baird. They also said that the purpose of this discovery was to find evidence of potential fraudulent transactions between Deutsch and Baird. So it's no surprise, and certainly no abuse of discretion, that the district court held that the proposed discovery encompassed information about Baird's finances. The court had already stated that that was prohibited, and plaintiffs didn't appeal from that. As a result, the district court didn't abuse its discretion in prohibiting the proposed discovery. Now, there are a number of other reasons that we raise in our briefs as to why this discovery was impermissible. Some of which I think Your Honors touched upon. There's no deadline for them to seek post-judgment discovery, but there is a deadline for them to bring an action for fraudulent conveyance. We state the relevant statutes of limitations in our brief, but in any event, everything we know is that the relevant transactions, if they were fraudulent conveyances, special limitations on those would have expired in 2015. Is that your sense of what the discovery was seeking to determine, as if they could file for fraudulent conveyance relief? Yes, that is specific. I believe they said almost exactly that to the district court, or they strongly implied it. They were looking for evidence of fraudulent transactions between Deutsch and Baird. They speculate that, well, maybe the share firm has information about fraudulent transfers other than the three transfers that were subject to prior lawsuits. They're stopped, they're time barred. We don't know whether that's the case. As you pointed out, it doesn't really make sense that the share firm would have information about fraudulent conveyances, but not bring a lawsuit about that. So that seems like pure conjecture. But in any event, I think at the heart of this is, plaintiffs sought a lot of things from the share firm, including a lot of things that are inappropriate. They sought information about Baird's finances, which the court had prohibited. They sought information about the three transfers, which would only be relevant to non-viable claims, claims that are stopped and time barred. The district court didn't have some duty to try to find where in the subpoena, maybe theoretically, it could encompass information that the share firm might have about things that would be permissible areas of discovery. With that, I'm happy to answer any questions that you have. Doesn't it matter that it was a motion? They sought permission beforehand. I mean, to get sanctioned for that, doesn't that lean a little towards the abuse of discretion at that point? I mean, they didn't serve the discovery. They sought permission beforehand. Could you respond to that a little bit, please? Sure. And are we talking specifically about the attorney's fees issue? Yes. Yes. So I don't think it's an abuse of discretion. The district court has at least three bases on which it can award fees, one of which is to deter bad future conduct. And here what the district court found was plaintiffs have engaged in 15 years of scorched earth discovery of Baird and have found scant, if any, evidence of fraudulent transfers, and they keep trying. Yes, they asked for permission from the court. They asked the court for permission to do precisely what the district court had already told them they couldn't do. They said we are seeking information not limited to Baird's finances, and we're doing so for the purpose of getting evidence of fraudulent conveyances, the thing that you said we would need before we took more discovery of Baird's finances. So I think that this we asked for permission so it's okay is not terribly persuasive. I would also say even so, my client incurred extraordinary litigation fees in responding to their request for the court to not enforce its prior order. Why was it extraordinary? Extraordinary is probably too much. It was tens of thousands of dollars. But we expended money on that. Why shouldn't we be reimbursed for that when they asked the court to change its mind? But I would say here, the history matters. And we explain that history in our brief. Plaintiffs have been admonished over and over and over again to stop. The district court had admonished them to stop. And it's against that history that we need to look at the district court's attorney's fee order. All right. Thank you, Your Honors. Very briefly, Your Honor. The sanctions are designed to deter bad conduct. This order deters all conduct. And it really does remove our Rule 69 rights. We can't even go into the court and ask, does this meet this? We believe that this, which we have not served, is outside the scope of what you asked for. But you could have narrowed the scope, to your colleague's point. I mean, I take her argument to be that the request here was broad enough that it arguably swept in some of the prohibited topics, right? I mean, you could have done the work of narrowing your requests. Counsel's point was that wasn't up to the district court at that point. It was an obligation on you or your client. So here's what I will say in response to that. There's very specific language in the court's December 2023 order as far as when additional discovery is allowed. And it uses the phraseology, new evidence of fraudulent avoidable transactions, in our effort to be abundantly careful that we have complied with that order. This is not a situation where we are flouting our obligations to the court. This is not bad conduct. This is not us abusing the judicial process. But, Counsel, it seems undisputed that you had no new evidence. You were asking permission to look for new evidence. Exactly right, Your Honor. We're using the court's phraseology to say you've given us a threshold. We want to investigate that issue precisely so that we can find new evidence. That's where that language comes from. This is not our language. We're trying to demonstrate to the court our abundant efforts to comply with their order, to understand that this is a different well. This is something that we're using in an effort to satisfy the court that we are not abusing Mrs. Baird in this process. Why did you reverse the district court for declining to adopt that argument? Two reasons. There is an abuse of discretion if the court essentially executes manifest ingestment. It's factual. You're looking to do what we prohibited, and you say, oh, no, we're just looking to see whether we can get something. Because on the facts, Your Honor, if this order is left as it is, we really don't feel like we can do anything. I'm talking about the facts of what the district court reviewed. Correct. What the district court reviewed. Your argument is that we ought to be able to do this, and the court says, I don't accept that. Now what does the court do? What this court should do is indicate that that was an abuse of discretion. What does the district court do? Because we only review. We don't do this, De Novo. We're reviewing a district court under abuse of discretion standard, and you make this argument which has some plausibility to it, and the court says, I don't buy that. I don't accept that that's what you're doing, which is essentially a fact finding as to intent. And now why should we reverse that? There is case law that establishes. Because we disagree with his rejection of your defense. An abuse of discretion results when there's fundamental unfairness. So that, Your Honor, is the reason. You aren't going to win on that one. Not after 15 years of scorched earth efforts. So the pointer in the Voegli cases that we've cited indicate that if a decision in the discovery mechanism results in a later problem that is fundamentally unfair. And what I'm saying is we have that same trail here, Your Honor. What can we possibly do? The district judge didn't think so. And he's in a much better, or she is in a much better position to make that ruling. The problem with the ruling as it stands is it puts us in a position where if we go back and say, even if we ask for, so we serve discovery. If that discovery then potentially could possibly include Mrs. Baird's finances, we're going to get sanctioned. So deal with it. But do you deal with it in the district court? That's where discovery matters begin and end typically.  And I would have to bring the same motion that I brought here to deal with it. You could move for a modification based on specific facts that didn't exist at the time in December 2023. You could come in with a much more modest request that you chose not to do. You've got all kinds of things. I mean, this is what happens in discovery. No, you can't have six depositions. Well, can I have three? Sure. You can't have six depositions. Don't ask, and here's your sanction award for asking. My client, this is, I understand that in the scope of the cases that you have in front of you, $59 million in the last case, the $40,000 sanction is, but to my client, that's real money. That is something that if he... Yesterday we were talking about $77, so... I'm ahead of that. It's larger than that. Thank you, Your Honor. My point is the dollar amount matters. It does matter. But generally, these sorts of disputes are resolved in the district court. Correct. And the abuse of discretion as standard exists if there is, if this court in its review of the evidence demonstrates that, you know what, in this instance, respectfully, you got it wrong, that there is a chilling effect here that is real. You're saying you got it wrong, and I think your sanction is excessive. You're focusing on you got it wrong, and I'm saying, I don't see where we review the district court rejecting your argument. You make a very good point, Your Honor. We do have two distinct issues on appeal. Yeah, and you want to focus on they got it wrong so we can go do this some more. I will take either one, Your Honor. That's why we raised two distinct issues on appeal. If there is no sanctions order, if we're not all of a sudden wearing the black hat because we asked the court ahead of time, because we asked the court, does this using your – Is there case law to that effect, that there is a difference there? Not that I could find, Your Honor. I guess people, you know, don't ask for permission ahead of time. They ask, you know, they deal with a motion to quash. We weren't willing to do that. My client was not willing to do that. We have great respect for the judges that we have here. So if there is no sanctions award, this is why we brought two distinct issues on appeal. If there's no sanctions for us asking, if this Court says that's not an abuse of the judicial process, that's actually an appropriate use of the judicial process. The door is open. Come and ask. Well, that would make sense if you hadn't already been told no. We were told no by this Court in December of 2023 when we issued subpoenas directly to all of the institutions with which Mrs. Barrett did her personal banking with the subpoenas that went to her children and went to her children's educational institutions. That's very different than asking an adverse law firm that did an investigation into her, what was the reason you brought these detailed claims? What is the reason that you – What are the documents that you received on the attorney's eyes only basis? We are trying to shift our focus. The problem we run into is that at some point in time, when you have a debtor who's saying, I'm living on the largest of my wife, at some point in time, maybe she is going to be intermixed in that. I don't know what's in the share law firm's files. I would like to see that. And what we attempted to demonstrate to the Court is that we're trying to use your language, we're trying to make sure we stay in the separate lane where you indicated we need to be, and we want to get this information. This is not – we're not asking – we didn't – this was not a subpoena directed to Mrs. Barrett. We even went to the lengths of giving her an advanced copy, giving her a copy of our motion. We served her, even though she wasn't a party to the subpoena, she's not a party to the action, but we thought she might want to, you know, weigh in on this issue. We did everything we possibly could. So that is the reason, Judge Loken, why we brought the second distinct issue. The reaction was this is just more harassment. $46,000 of reaction they had, you know. I mean, I would love to be paid that for a six-page memo. That's a lot. Where is the – what did you just say? The original sanctions award, Your Honor, was – the original submission that Mrs. Barrett's attorney sought was a sanctions award of $46,000 for a six-page memo and a three-sentence memo. And so the judge magistrate Schultz looked at – Schultz looked at that and reduced it to $39,000, but that's still extraordinary. So every time my client says perhaps we can pursue this, the cost to even try is $40,000. That has a distinct chilling effect. For the 16th time, maybe it should be. This is a different well, Your Honor. This is a different well. We're trying to find where in the world this money is stashed. It's $1.9 million. That's a lot of money. That's worth the effort. And that's what we're trying to do, Your Honor. We appreciate the Court's consideration of both of the issues that we've raised on appeal. Certainly appreciate the questions that you've raised. Thank you very much. Well, thank you, counsel. Argument's been helpful. Certainly an unusual case, and we will take it under advisement and do our best with it. Thank you, sir. Thank you.